UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
FRANK PIRONE,                  : 17-cv-03070-MKB-RER
                Plaintiff,     :
                               :
    - versus -                 : U.S. Courthouse
                               : Brooklyn, New York
                               :
CITY OF NEW YORK,              : February 21, 2018
                Defendant      :
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Plaintiff**:          **Joshua Fitch, Esq.**
                                **Ilyssa Fuchs, Esq.**
                                Cohen & Fitch LLP
                                233 Broadway, Suite 1800
                                New York, NY 10007


**For the Defendant**:          **Bridgette M. Nunez, Esq.**
                                New York City Law Department
                                100 Church Street
                                New York, NY 10007



**Transcription Service**:      **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Civil Cause for Status Conference,

2   docket number 17-cv-3070, Pirone v. City of New York.

3          Counsel for plaintiff, please state your name

4   for the record.

5          MR. FITCH:  For plaintiff, Frank Pirone, Joshua

6   Fitch on behalf of the law firm of Cohen & Fitch, 233

7   Broadway --

8          THE COURT:  Address is not necessary.

9          MR. FITCH:  No?  Okay.

10          THE COURT:  We got it on the record.

11          MR. FITCH:  Yes.

12          THE CLERK:  Counsel for the defendants?

13          MR. FITCH:  And I was going to say my

14   associate, Ilyssa Fuchs.

15          MS. FUCHS:  Good morning.

16          THE COURT:  Good morning.

17          THE CLERK:  Sorry.  Counsel for the defendants?

18          MS. NUNEZ:  Yes, good morning.

19          Bridgette Nunez on behalf of the City of New

20   York, Ferrera and Stanley (ph.).

21          THE COURT:  Good morning.  Good morning, yes,

22   it still is morning.

23          Okay.  If I am not mistaken, when we had our

24   telephone conference with Mr. Pirone, we went over the

25   basic facts a little bit.

3

Proceedings

1           MS. NUNEZ:  Yes, your Honor.

2           THE COURT:  Since that time, an amended

3    complaint has been filed, correct?

4           MS. NUNEZ:  Yes.

5           THE COURT:  And served and we've got everybody

6    on the docket in the caption who needs to be there, yes?

7    You don't know?

8           MR. FITCH:  I mean, assuming -- you know, I am

9    not going to impugn City counsel.  I just -- according to

10   the City, this is everyone that should be here but I

11   probably will not know for sure until depositions take

12   place, I am imagining, your Honor.

13          THE COURT:  Okay.

14          MR. FITCH:  Just based on my own personal

15   experiences in these cases.

16          THE COURT:  All right.  Then we're going to get

17   into perhaps a problem because the statute of

18   limitations, if there are additional people that needed

19   to be added.

20          MR. FITCH:  Well, that's sort of the reason why

21   I guess the good news for us in terms of the gift that

22   was given to us when we joined the case is that there is

23   this parallel state proceeding that has state claims

24   which would sort of us under a respondeat superior theory

25   if in fact we did not have all of the parties properly

4

Proceedings

1  named in this action.  So --

2         THE COURT:  Are you counsel in that state

3  action now?

4         MR. FITCH:  We've appeared in that action just

5  to keep it from being dismissed for his lack of

6  prosecution and getting a default against him but there

7  -- I mean, there's been an initial conference but there

8  has not been anything that has occurred in that case.

9         THE COURT:  When was that initial conference?

10        MR. FITCH:  A couple of weeks ago, I think,

11  your Honor.

12        THE COURT:  Oh, okay.

13        MR. FITCH:  We actually initiated it just to

14  get again get things sort of moving on, you know, in both

15  directions.  So we -- you know, if possible not to bog

16  down two jurisdictions with the same matter.

17        MS. FUCHS:  And that was on February 5th.

18        THE COURT:  So he filed a notice of claim?

19        MR. FITCH:  So as I understand it from prior

20  counsel, he had attorneys at one point who filed a notice

21  of claim, sat him for a 50-h.

22        MS. FUCHS:  No, he may not have sat.

23        MR. FITCH:  May not have sat?  Filed a notice

24  of claim and then filed a state court action.  At some

25  point, there was a motion to withdraw from his previous

5

Proceedings

1   counsel stating that they had been unable to communicate

2   with him.

3           And then thereafter, I think he, not knowing

4   that had happened in that action, I think he received a

5   letter from them saying that he had -- they had

6   discontinued on his -- or discontinued as his attorneys

7   and I think he understood that to mean that that action

8   was gone, which is why he filed --

9           THE COURT:  Filed the federal action.

10          MR. FITCH:  -- pro se in federal court.  So now

11  we're sort of picking up the pieces as it were.

12          THE COURT:  Are you, Ms. Nunez, representing

13  the City -- the defendants in the state court action?

14          MS. NUNEZ:  No, your Honor.  That is assigned

15  to a different division, the Brooklyn tort division.

16          If I may, your Honor, as the defendants

17  asserted in their answer to the initial complaint, as

18  well as the amended complaint, and after conferring with

19  Brooklyn torts ACC, we haven't been able to find a notice

20  of claim that was filed.  So that is -- that's definitely

21  an issue because we don't -- the comptroller doesn't have

22  a record of it.

23          THE COURT:  Okay.  I was going to suggest if a

24  notice of claim had been filed, that we just deal with it

25  here.  I mean, it doesn't make sense to have two separate

Transcriptions Plus II, Inc.

6

Proceedings

1  cases dealing with the same incident.

2       MR. FITCH:  I've had this situation before,

3  your Honor.  I was actually pleasantly surprised that the

4  Colorado Abstention Doctrine had already been dealt with

5  before I got into this case because I've litigated that

6  in the southern district before.

7       And that particular action what happened was

8  that the issues were joined -- all of the issues were

9  joined in one action.  The only difference was in that

10  particular action, we still had time on the federal

11  statute of limitations which I think -- again, not

12  speaking for the City, I think for whatever reason they

13  felt okay about, there may be some sort of a mechanical

14  inability to sort of look at this the same way when

15  there's, you know -- in that particular action, I could

16  have just filed another complaint alleging -- in the same

17  venue, alleging federal causes of action.  So I don't

18  think they saw it as the same situation.

19       And again, I am not -- I don't want to speak

20  for the City.  I just -- experience tells me that this

21  might be a different scenario because we're no longer

22  timely on any claims.

23       THE COURT:  Yeah.  And especially because the

24  City can't find the notice of claim, right?

25       MS. NUNEZ:  It is our position that it was not

Proceedings

1   filed.

2           MR. FITCH:  We have the file from prior

3   counsel.  I mean, it indicates that in the complaint that

4   one was filed but we do have the file from prior counsel.

5   So as long as I can, you know -- I can verify --

6           THE COURT:  Don't they have -- like when you

7   file a notice of claim, doesn't it get like a --

8           MR. FITCH:  It's a PI number.

9           THE COURT:  Yeah.  And do you have that?

10          MR. FITCH:  I don't know that we have a PI

11  number but my associate is telling me that she believes

12  that there is a notice of claim in the file that we

13  received from prior counsel.  So I can, you know -- I can

14  double-check and to see what correspondence they have

15  from the City with respect to filing that notice of

16  claim.

17          MS. FUCHS:  Because at least according to the

18  verified complaint they filed, it was filed with the City

19  on October 24th, 2014.

20          MR. FITCH:  But having nothing to do with any

21  of those actions, your Honor, I can't really, you know --

22          THE COURT:  Uh-hum.

23          MR. FITCH:  -- I can speak sort of information

24  and belief but --

25          THE COURT:  Well, let's see we can find the

8

Proceedings

1    notice of claim, which means the state court action --

2    the state claims are alive, what would the City's

3    position be with respect to bringing those claims here,

4    permitting plan to file, this would be a second amended

5    complaint, to assert those claims.

6           MS. NUNEZ:  I mean at this particular moment, I

7    wouldn't be able to -- I would have to confer with my

8    supervisor to determine what our position would be but

9    just -- you know, our position right now would probably

10   be on the grounds that it's time barred.

11          THE COURT:  Now I mean, isn't the statute

12   tolled during the pendency of a case that was filed

13   timely in state court, it's tolled?  So they satisfy the

14   statute of limitations.

15          MS. NUNEZ:  I mean, your Honor, I would look

16   into it.

17          THE COURT:  All right.  Well, let's first --

18   why don't you first look at the file, find out if he can

19   get a PI number or you've got correspondence with the

20   comptroller indicating that one was filed.  They can look

21   if they verify that it was filed, then the answer to the

22   question was whether you want to litigate in two forums

23   or one.  I think it really comes down to that.

24          But all that would get you would be to get to

25   people who were not named on the federal claims.

9

                              Proceedings

1          MR. FITCH:  As I -- I mean, again, the state

2    claim is a little nondescript in terms of the particular

3    causes of action.  I can sort of parse out what there was

4    in this case but yes, I believe so, your Honor.  I don't

5    think there's anything independent in the state action.

6    My only concern would be really to the extent that I got

7    into depositions in this case and found out that there

8    was a third officer --

9          THE COURT:  Who was beating on him or

10   something.

11         MR. FITCH:  Yes.  Then I would -- you know, I

12   would be committing malpractice if I withdrew the state

13   case without knowing that for sure.

14         THE COURT:  Sure.

15         MR. FITCH:  Not -- again, not impuging the

16   City.  I just -- if I could only take the City's word

17   though, you know, my life would be much easier but --

18         THE COURT:  All right.  Well, what is this case

19   about?  He got beat up by two police officers -- two or

20   more police officers.

21         MR. FITCH:  Yes.  Yes.  I mean, there are

22   allegations that he was -- the one thing that I removed

23   the false arrest claim in this particular case based on

24   the Devon Peck (ph.) issue because he was admittedly in

25   this park, sitting on a bench and as I understand it,

10

Proceedings

1  this particular park, you could not be in without a child

2  and this was, you know, a playground and knowing --

3  having kids of my own, I know that you're not -- as an

4  adult, you're not allowed to be in parks without a child

5  present.  So there would have been --

6          THE COURT:  Any?

7          THE COURT:  Particular -- again, just knowing

8  Brooklyn -- the Brooklyn parks that I know of, there's

9  signs out there that basically say that you cannot be

10  there by yourself as an adult.

11          So I would be willing to concede there's at

12  least arguable probable cause for the arrest but this

13  case is really not about the false arrest, you know, as

14  it were in this case.  This case is about once the --

15  whether or not there was probable cause to arrest and

16  conceding that there was, our client alleges that he was

17  punched in the face several times, shattering his jaw.

18  He went to the hospital, had surgery in the days

19  immediately following the incident and then went back

20  approximately two months later to have another surgery to

21  remove the plates and screws that were in his jaw and

22  perform further bone graft procedures.

23          And as I understand it from him -- and there

24  seems to be some intimation of this from the records that

25  there may be the potential for future surgeries in that

Proceedings

1  respect, you know.

2       And obviously it's our position that that force

3  was excessive as a matter of law, regardless of any

4  probable cause they had.  They did not need to use --

5  that was unreasonable under the circumstances.

6       And then afterwards, that they -- that the

7  officers made up a -- concocted a story about him

8  attempting to swallow drugs in order to cover up their

9  use of force.

10            THE COURT:  Okay.

11            MR. FITCH:  And there is also collaterally, a

12  claim -- it's also a route of the excessive force claim

13  and I dealt with it in the other case, actually where

14  your Honor was the magistrate, an unreasonable

15  handcuffing claim because the City has a policy in their

16  -- pursuant to their patrol guide, of handcuffing all

17  prisoners who are hospitalized and it's our position that

18  there is no -- that the policy does not comport with

19  constitutional requirements of when -- there's no

20  evaluation of when handcuffing is or is not necessary

21  based on the risk of flight, safety to the officers,

22  safety to other people.  It's just if they're in a

23  hospital, police guides -- they're a hospital arrested,

24  they're handcuffed the entire time they're there, so --

25            Again, those claims I think are collateral to

12

Proceedings

1  the major claim in this case which is the excessive force

2  but that's sort of the long and short of it.

3           THE COURT:  Do we have the medical records yet?

4           MR. FITCH:  Yes.  We just actually provided the

5  complete set of medical records to defense counsel who I

6  believe prior to this, only had the incident records but

7  now there's the incident and follow-up --

8           THE COURT:  Subsequent treatment.

9           MR. FITCH:  --  which is about 500 pages or so.

10           THE COURT:  All right.  And have you provided

11  authorizations?

12           MS. FUCHS:  Yes.

13           MR. FITCH:  Yes.

14           THE COURT:  All right.  When is your client

15  going to get out?

16           MR. FITCH:  He's --

17           THE COURT:  I think I asked that on the phone

18  but I don't remember when.

19           MR. FITCH:  He's in part of this work release

20  and probably my associate is better equipped to speak to

21  this particular issue, your Honor.

22           MS. FUCHS:  So he's currently being housed at

23  Lincoln Correctional Facility, which is actually here in

24  the City. It's on 110th Street in Harlem.  He's part of

25  the work release program.

13

Proceedings

1        Currently, because he was just transferred, for
2   the next couple of weeks, he's not really allowed to go
3   out but after that, the restriction will be lifted.  He
4   will be allowed out certain times during the day to look
5   fora job and once he finds a job, will be allowed out
6   during the day for work purposes.  And then has to come
7   back and be locked in at night.

8        I spoke to a counselor who told me he also may
9   be available or able to attend legal conferences or
10  meetings with attorneys but they have to look as to
11  whether or not that qualifies as a reason why he can
12  leave the premises other than work.

13       THE COURT:  Okay.  So at the very lest, there
14  will be some document discovery.  You're going to need to
15  send the authorizations out, get medical records.  I
16  assume the plaintiff is going to want the disciplinary
17  records, all that stuff --

18       MR. FITCH:  Yes, your Honor.

19       THE COURT:  -- that you normally get.  Do you
20  have the underlying criminal documents from the criminal
21  case?

22       MR. FITCH:  Yes, your Honor.  We have the basic
23  criminal file.

24       THE COURT:  All right.

25       MR. FITCH:  As I understand it, there was

14

Proceedings

1  undoubtedly IAB interviews and investigations, pertaining

2  to this specific case, regardless of any other

3  disciplinary issues with the officers.

4             THE COURT:  Okay.

5             MR. FITCH:  So there's certainly those

6  documents and recordings that we need.

7             THE COURT:  And this is from 2014?

8             MR. FITCH:  Yeah.

9             THE COURT:  Okay.  So you're going to want the

10  IAB written reports and the audio tapes which we know

11  it's standard practice to record interviews.

12             Ms. Nunez, just -- let me flag this as an issue

13  that I've dealt with in other cases.  So there is a --

14  initially when there's a complaint, a -- sort of an area

15  IAB unit is contacted to interview the plaintiff -- the

16  complainant.

17             When it's an excessive force, from what I

18  understand, when there's -- when the allegation is

19  excessive force, that is handled by a separate IAB team.

20  I think it's Group 54, if I am not mistaken.

21             MR. FITCH:  Yes.

22             THE COURT:  That's what I have heard.

23             MR. FITCH:  I think that's right, your Honor.

24             THE COURT:  All right.  So then everything

25  continues after that point under the Group 54

15

Proceedings

1   designation.  So what happens is sometimes the initial

2   group that goes out and takes the statement, that

3   information, while indicated somewhere in the electronic

4   records, because I know everything now is electronic.

5   Everybody is supposed to upload everything.  Sometimes

6   that information gets lost, like in this other case,

7   there was the actual audio recording of the initial

8   interview of the plaintiff.  Stayed with Group 9, which

9   was the group that initially went out but after Group 9,

10  found out, oh, it's an excessive force, Group 54 took

11  over but they -- Group 9 never uploaded the audio of the

12  interview and so we go through two plus years of

13  discovery with the plaintiff's counsel saying we want the

14  audio, we want the audio and the City saying there is no

15  audio.  We checked with Group 54 and they didn't check

16  with Group 59, of course, when they deposed the -- the

17  Group 9 people, said of course I taped it.  We tape every

18  interview and we had big problems and someone's gotten

19  sanctioned and now that's up with the district judge.

20         So don't rely on what some person in IAB is

21  telling you that's sitting behind a desk.  Look to see

22  who conducted the interview, which police officer and

23  reach out to that person, if there's no audio tape in the

24  system and say did you audio.  Look at your desk.  Look

25  at -- you know, so just be careful.

16

Proceedings

1          And it's not say that anyone is purposefully

2     doing anything to hide the ball or anything, but it just,

3     you know, it's a huge bureaucracy.

4               MR. FITCH:  I know.

5               THE COURT:  It's like one of the biggest

6     bureaucracies around and things fall through the cracks.

7               MR. FITCH:  I always say assume the right

8     doesn't know what the left hand is doing.

9               THE COURT:  What the left hand is doing, right.

10          All right.  So we're going to want at least

11     that investigation and you're going to get the abstracts

12     of CCRB and IAB for all of the -- or indices or whatever

13     they call them, for counsel and you'll go through and

14     you'll find out which ones.  Produce those unredacted and

15     if you don't have a confidentiality order -- I don't

16     think you do.

17               MR. FITCH:  Not yet, your Honor.

18               THE COURT:  Get one.  I like them unredacted

19     because it takes another step out because invariably you

20     get a redacted one and you say oh, I don't know what -- I

21     want to see that.  That looks interesting.  And then I

22     have to -- you know, just give it unredacted.  Following

23     my Frails (ph.) decision.  You get what you get and if

24     you have any problems, you'll let me know.

25               You're going to need to send him to a

17

Proceedings

1    maxillofacial --

2              MR. FITCH:  That's right.

3              THE COURT:  -- specialist.

4              MR. FITCH:  That's exactly right.

5              THE COURT:  And that might be problematic

6    because of his work release status.

7              MR. FITCH:  I'm thinking, your Honor, when we

8    get to a -- if it pleases the Court, to do -- the idea

9    would be to do expert discovery after other fact

10   discovery is complete and perhaps by that time, you know,

11   having his availability is maybe less than an issue under

12   the work release.

13             THE COURT:  Okay.

14             MR. FITCH:  It's just a thought.

15             THE COURT:  All right.  Do you know how long he

16   is going to be on work release?

17             MR. FITCH:  I know he maxes out -- if he didn't

18   get work release and he just sat in, he maxes out about a

19   year from now, so --

20             THE COURT:  Okay.

21             MR. FITCH:  So -- and I am guessing, your

22   Honor, to the extent that work release or the facility

23   needs an order to make them -- to cut through some of the

24   bureaucracy over there, your Honor would be inclined to

25   sign such an order.

18

Proceedings

1        THE COURT:  Yes.

2        MR. FITCH:  Okay.

3        THE COURT:  Currently, discovery is set to

4   close on June 1st.  That's not going to be enough time.

5        MR. FITCH:  It really sort of dependent on IAB

6   but in my experience, probably not.  But maybe,

7   notwithstanding expert discovery, that might not be an

8   unreasonable deadline.  It just depends on IAB.  It's

9   certainly more than enough time to -- even with him being

10  in, to get three or four depositions conducted.

11       THE COURT:  But you're going to want Ms. Nunez

12  before you depose him, to get the medical records

13  pursuant to the authorizations that you've been provided,

14  correct?

15       MS. NUNEZ:  Yes, your Honor.  They did provide

16  me with about 400 pages of medical records today.  So I

17  will have an opportunity to review that, as well as the

18  ones that we do have.

19       THE COURT:  All right.  But you're going to

20  send those authorizations out because you want to double-

21  check to make sure you got everything that there is.

22       MS. NUNEZ:  Correct, your Honor.

23       THE COURT:  All right.  And then you're going

24  to take his deposition.  So look, I think it's unlikely

25  that you'll complete fact discovery by June 1st.  But I

19

Proceedings

1    am going to keep the schedule in place.  We are supposed

2    to meet again on -- are we?

3              MR. FITCH:  I didn't see it in the --

4              THE COURT:  Yes, final pre-trial conference is

5    June 7th at 11:30 but I don't see a status conference.

6              THE CLERK:  This is it.

7              THE COURT:  This is it?

8              THE CLERK:  Yes.

9              THE COURT:  Yes, this is it.

10             MR. FITCH:  I guess for -- it feels like a

11   preliminary conference --

12             THE COURT:  Yeah.

13             MR. FITCH:  -- probably because there was no

14   attorney on the other end.

15             THE COURT:  Yeah.  You know, let's do this

16   then --

17             THE CLERK:  He was represented pro se when we

18   set that schedule date.

19             THE COURT:  Yeah, let's do this.

20   (Pause)

21             THE COURT:  Let us do this.  I would like

22   status report on May 25th, a comprehensive status report.

23   So you folks get together, figure out what you're going

24   to tell me but I want to know what the status of

25   discovery is.  We've done this, we've done that.  We're

20

Proceedings

1  going to do these other things on these dates.

2           And we would like to adjust the schedule

3  accordingly.  All right?  Including adjourning the June

4  7th, final pre-trial conference, if that's what you want

5  to do.  We can keep -- you know, we'll keep June 7th in

6  place as a placeholder but if it's -- it doesn't make

7  sense to meet then, I don't want to just pull you in for

8  no reason.  So I'll have to take your lead on that.  All

9  right?  Does that make sense?

10           MS. NUNEZ:  Yes, your Honor.

11           MR. FITCH:  Sounds good.

12           THE COURT:  Have you had any discussions about

13  settling the case?

14           MR. FITCH:  Very preliminarily, your Honor.  I

15  have given the City a demand and given the severity of

16  the injuries, I am guessing it is probably going to take

17  Ms. Nunez some time to run that up the flagpole and

18  determine what their response, if any, is going to be.

19           THE COURT:  No question that he was injured,

20  right?

21           MS. NUNEZ:  No.

22           THE COURT:  Okay.  So this case at its heart

23  comes down to who you believe as to the necessity of the

24  force that was used because it's a broken jaw.  You said

25  shattered.

Proceedings

1          MR. FITCH:  I mean, it was broken in several

2   places, as I understand it.

3          THE COURT:  And is the contention that the

4   ground shattered his jaw or he was struggling and the

5   force was  necessary?

6          MS. NUNEZ:  There are entries in the medical

7   record that indicate that he impacted with the fence on

8   his face and yes, there is also the fact that he was

9   resisting arrest, so there was some sort of struggle that

10  ensued where he may have been injured as a result of

11  that.

12         THE COURT:  Okay.  It comes down to who you

13  believe and whether the force that was used was

14  commensurate with the -- I will use the word resistance

15  with a small "r".  All right.

16             It shouldn't be too much of a trial.  Really

17  three witnesses to speak on that, unless you have someone

18  else who remembers the incident, a parent perhaps who was

19  in the park.

20         MR. FITCH:  To the extent the experts have

21  anything relevant to say about that --

22         THE COURT:  That's true.

23         MR. FITCH:  -- maybe --

24         THE COURT:  That's true.  Well, if you need my

25  help settling the case, you'll let me know, okay?

22

Proceedings

1        MR. FITCH:  Sounds good.

2        MS. NUNEZ:  Thank you.

3        THE COURT:  All right.  off the record.

4            (Matter concluded)

5                -o0o-

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Transcriptions Plus II, Inc.

23

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **9th** day of **January**, 2018.

*Linda Ferrara*
Linda Ferrara

AAERT CET**D 656
Transcriptions Plus II, Inc.