UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------
FRANK PIRONE,

                         Plaintiffs,


                                                    <u>**17 CV 03070**</u>
                                                    **(MKB)(RER)**


             -against-

THE CITY OF NEW YORK, et al.

                         Defendants.


-----------------------------------------------------------------------


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO
AMEND, SEVER AND CERTIFY THE HOSPTIALIZED HANDCUFFING
<u>POLICY CLAIM FOR CLASS TREATMENT</u>**

JOSHUA FITCH
COHEN & FITCH LLP
Attorneys for Plaintiff
225 Broadway, Suite 2700
New York, N.Y. 10007
(212) 374-9115
jfitch@cohenfitch.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

ARGUMENT .................................................................................................................. 4

I.     CLASS TREATMENT OF THE HANDCUFFING CLAIM IS APPROPRIATE AND PROPER IN THIS CASE ................................................................................... 4

     A.     The Proposed Class Meets the Requirements for Certification Under Rule 23 ...... 5

          i.     Numerosity – Rule 23(a)(1). ....................................................................... 6

          ii.     Common Questions of Law or Fact – Rule 23(a)(2) ................................. 8

          iii.     Typicality – Rule 23(a)(3) ........................................................................ 10

          iv.     Adequacy of Representation – Rule 23(a)(4) .......................................... 10

          v.     Certification of a Damages Class Under 23(b)(3) is Warranted ............... 11

          vi.     Certification of an Injunctive Class is Also Warranted Under 23(b)(2) ... 14

          vii.     The Class Definition is Clearly Ascertainable ......................................... 15

     B.     There is No Procedural Impediment to Allowing the Handcuffing Claim to be Amended, Severed and Treated as a Class Action ................................................. 16

          i.     The Nature of the Initial Pleadings is Irrelevant to Determining Whether a Class Action Exists ................................................................................ 16

          ii.     There is Ample Precedent Establishing the Propriety of Amending and/or Recharacterizing an Individual Claim as a Class Action .......................... 17

     C.     Changing an Individual Claim into a Representative Claim is Insufficient to Warrant Denial of Class Treatment ..................................................................... 18

          i.     The Discovery Burdens Associated with Class Treatment Do Not Constitute Unfair Prejudice ..................................................................... 19

          ii.     There is no Prejudice Where the Class Claim is the Same as Plaintiff's Original Hospitalized Handcuffing Policy Claim ..................................... 20

iii.     There is No Plausible Argument that Defendants Were Prejudiced by the Passage of Time Between the Complaint and the Instant Motion ............21

II.     UPON CERTIFICATION, THE CLASS CLAIMS SHOULD BE SEVERED ...............25

CONCLUSION ............................................................................................................................25

**TABLE OF AUTHORITIES**

Ahmed v T.J. Maxx Corp., 777 F Supp 2d 445 (EDNY 2011) .....................................................25

Alexander A. ex rel. Barr v Novello, 210 FRD 27 (EDNY 2002) ...............................................6

All Star Carts and Vehicles, Inc. v BFI Can. Income Fund, 280 FRD 78 (EDNY 2012) .............14

Amchem Products, Inc. v Windsor, 521 US 591 (1997) .................................................................5

Ashcraft v Welk Resort Group, Corp., 2018 WL 357850 (D Nev Jan. 10, 2018)..................17, 18

Authors Guild, Inc. v Google Inc., 721 F3d 132 (2d Cir 2013).....................................................23

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 522 (2nd Cir. 2000) .......................11

Balverde v Lunella Ristorante, Inc., 2017 WL 1954934 (SDNY May 10, 2017) .........................14

Bank v Am. Home Shield Corp., 2013 WL 789203 (EDNY Mar. 4, 2013) .................................17

Bernstein v Natl. Liberty Intern. Corp., 407 F Supp 709 (ED Pa 1976).......................................19

Bertrand v Sava, 535 F Supp 1020 (SDNY 1982), revd, 684 F2d 204 (2d Cir 1982) ............17, 18

BlackRock Balanced Capital Portfolio (FI) v Deutsche Bank Natl. Tr. Co., 2018 WL 5619957 (SDNY Aug. 7, 2018) ...................................................................................................................13

Block v. First Blood Associates, 988 F.2d 344 (2d Cir.1993).......................................................23

Bolin v Sears, Roebuck & Co., 231 F3d 970 (5th Cir 2000)...........................................................5

Bristol Vil., Inc. v Louisiana-Pac. Corp., 916 F Supp 2d 357 (WDNY 2013) .............................14

Brown v Kelly, 244 FRD 222 (SDNY 2007), affd in part, vacated in part, 609 F3d 467 (2d Cir 2010) ............................................................................................................................................13

Brown v Kelly, 609 F3d 467 (2d Cir 2010)..............................................................................8, 12

Burley v City of New York, 2005 WL 668789 (SDNY Mar. 23, 2005) .........................................6

Bynum v D.C., 214 FRD 27 (DDC 2003) ...................................................................................13

Caridad v. Metro-N. Commuter R.R., 191 F.3d 283 (2d Cir. 1999) ............................................10

Certain Underwriters at Lloyd's of London v Illinois Nat. Ins. Co., 2012 WL 4471564 (SDNY Sept. 24, 2012) ............................................................................................................................18

Coates v Johnson & Johnson, 1981 WL 26976 (ND Ill May 29, 1981).......................................17

Collins v Olin Corp., 248 FRD 95 (D Conn 2008) ......................................................................13

Comer v Cisneros, 37 F3d 775 (2d Cir 1994)............................................................16

Commander Oil Corp. v. Barlo Equipment Corp., 215 F.3d 321 (2d Cir.2000) ...........22

Conover v Rash Curtis & Assoc., 2016 WL 3708656 (DNJ July 12, 2016) ........................ passim

Cortigiano v. Oceanview Manor Home For Adults, 227 F.R.D. 194 (E.D.N.Y. 2005) .................8

Cowen v Bank United of Texas, FSB, 70 F3d 937 (7th Cir 1995)................................24

Cruz v Am. Airlines, 150 F Supp 2d 103, 111 (DDC 2001), affd sub nom. Cruz v Am. Airlines, Inc., 356 F3d 320 (DC Cir 2004)................................................................25

Daniels v City of New York, 198 FRD 409 (SDNY 2001) ............................................9

Dickerson v Novartis Corp., 315 FRD 18 (SDNY 2016) ............................................25

Duling v. Gristede's Operating Corp., 265 F.R.D. 91 (S.D.N.Y. 2010).......................21

Duprey v Connecticut Dept. of Motor Vehicles, 191 FRD 329 (D Conn 2000) ...........14

E.W. by and through T.W. v Dolgos, 884 F3d 172 (4th Cir. 2018) ...............................12

Fleisher v Phoenix Life Ins. Co., 2013 WL 12224042 (SDNY July 12, 2013)..............9

Gen. Tel. Co. of Southwest v Falcon, 457 US 147 (1982) ............................................21

Gortat v. Capala Bros., Inc., 2010 WL 1423018 (E.D.N.Y. Apr 09, 2010) ..................15

Green v. Wolf Corp., 50 F.R.D. 220 (S.D.N.Y.1970) ..................................................23

Gunnells v Healthplan Services, Inc., 348 F3d 417 (4th Cir 2003)................................4

Hardgers-Powell v Angels in Your Home LLC, 330 FRD 89 (WDNY 2019).............14

Hasemann v Gerber Products Co., 331 FRD 239 (EDNY 2019) ..................................15

Hernandez v. AutoZone, Inc., 323 F.R.D. 496 (E.D.N.Y. 2018) ...................................8

Hirschfeld v. Stone, 193 F.R.D. 175 (S.D.N.Y. 2000) .................................................11

In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 241 F.R.D. 185, 194 (S.D.N.Y. 2007) .................................................................................................15

In re Nasdaq Market-Makers Antitrust Litig., 169 F.R.D. 493 (S.D.N.Y. 1996)...........15

In re NASDAQ Market–Makers Antitrust Litig., 187 F.R.D. 465 (S.D.N.Y.1998).....................21

In re Nassau County Strip Search Cases, 461 F3d 219 (2d Cir 2006)............................................5

In re SunEdison, Inc. Sec. Litig., 329 FRD 124 (SDNY 2019)....................................................14

In re U.S. Foodservice Inc. Pricing Litig., 729 F3d 108 (2d Cir 2013)............................................4

In re Visa Check/MasterMoney Antitrust Litig., 280 F3d 124 (2d Cir 2001), abrogated by In re Initial Pub. Offerings Sec. Litig., 471 F3d 24 (2d Cir 2006)..........................................................13

In re W. Dist. Xerox Litig., 850 F Supp 1079 (WDNY 1994) ....................................................24

Jacob v Duane Reade, Inc., 293 FRD 578 (SDNY 2013), affd, 602 Fed Appx 3 (2d Cir 2015) ..12

King v Gulf Oil Co., 581 F2d 1184 (5th Cir 1978) ......................................................................23

Konig v TransUnion, LLC, 2020 WL 550285 (SDNY Feb. 4, 2020) .................................. passim

Kostrzewa v City of Troy, 247 F3d 633 (6th Cir 2001) ...............................................................13

Kurtz v Kimberly-Clark Corp., 321 FRD 482 (EDNY 2017) ......................................................23

Langley v Coughlin, 715 F Supp 522 (SDNY 1989)..............................................................17, 21

Lanqing Lin v Everyday Beauty Amore Inc., 2019 WL 3037072 (EDNY July 11, 2019) ............6

Lizondro-Garcia v Kefi LLC, 300 FRD 169 (SDNY 2014)..........................................................6

Loper v. New York City Police Department, 135 F.R.D. 81 (S.D.N.Y. 1991) ............................14

Lopez v City of Chicago, 2002 WL 31415767 (ND Ill Oct. 25, 2002) ..........................................7

Marisol A. v. Giuliani, 126 F.3d 372 (2d Cir. 1997) .......................................................... passim

Medicare Beneficiaries' Def. Fund v. Empire Blue Cross Blue Shield, 938 F.Supp. 1131 (E.D.N.Y.1996)...............................................................................................................................25

Middle Atl. Utils. Co. v. S.M.W. Dev. Corp., 392 F.2d 380 (2d Cir.1968) .................................23

Minter v Wells Fargo Bank, N.A., 274 FRD 525 (D Md 2011).....................................................5

Monahan v New York City Dept. of Corrections, 214 F3d 275 (2d Cir 2000) ............................18

Monell v Dept. of Social Services of City of New York, 436 US 658 (1978) ................................3

Monk v. , Paramount Recovery System, 2010 WL 11553076 (D Md June 9, 2010)..............17, 20

Morlan v Universal Guar. Life Ins. Co., 298 F3d 609 (7th Cir 2002)...........................................16

Moukengeschaie v Eltman, Eltman & Cooper, P.C., 277 F Supp 3d 337 (EDNY 2017) ............23

New Windsor v. Tesa Tuck, Inc., 919 F.Supp. 662 (S.D.N.Y.1996) ...........................................19

Oakley v Verizon Communications Inc., 2012 WL 335657 (SDNY Feb. 1, 2012).......................8

Oscar v BMW of N. Am., LLC, 274 FRD 498 (SDNY 2011) ......................................................7

Parker v. Columbia Pictures Indus., 204 F.3d 326 (2d Cir. 2000)..................................................21

Paskuly v Marshall Field & Co., 646 F2d 1210 (7th Cir 1981)...............................................17, 21

Payton v County of Kane, 308 F3d 673 (7th Cir 2002)..................................................................17

Phillips Petroleum Co. v Shutts, 472 US 797 (1985) ....................................................................13

Police and Fire Retirement Sys. of City of Detroit v IndyMac MBS, Inc., 721 F3d 95 (2d Cir 2013) ....................................................................................................................................16

Presser v. Key Food Stores Co-op, Inc., 218 F.R.D. 53 (E.D.N.Y. 2003) ..............................17, 20

Pyke v Cuomo, 209 FRD 33 (NDNY 2002)...................................................................................21

Rachman Bag Co. v. Liberty Mutual Insurance Co., 46 F.3d 230 (2d Cir.1995).........................23

Robidoux v. Celani, 987 F.2d 931 (2d Cir. 1993) ........................................................................10

Robinson v Metro-N. Commuter R.R. Co., 267 F3d 147 (2d Cir 2001) ..................................5, 10

Rodriguez v Eastman Kodak Co., 88 Fed Appx 470, 471 (2d Cir 2004) .....................................22

Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590 (2d Cir. 1986)....................................................12

Schwab v Philip Morris USA, Inc., 449 F Supp 2d 992, 1098 (EDNY 2006), rev'd sub nom. McLaughlin v Am. Tobacco Co., 522 F3d 215 (2d Cir 2008) .....................................................24

Schwend v U.S. Bank, N.A., 2011 WL 5039812 (ED Mo Oct. 24, 2011) ....................................18

Seidenrose v Mercy Med. Ctr., 2006 WL 8439436 (EDNY July 10, 2006) ..........................17, 19

Shelton v City of Taylor, 92 Fed Appx 178 (6th Cir 2004)...........................................................13

Soares v State of Conn., 8 F3d 917 (2d Cir 1993)........................................................................13

S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28 (2d Cir.1979) ..............................19

State Teachers Retirement Bd. V. Four Corp., 654 F.2d 843 (2d Cir, 1981) ...............................23

Stinson v City of New York, 282 FRD 360 (SDNY 2012) .................................................. passim

Toney-Dick v. Doar, 2013 WL 5295221 (S.D.N.Y. Sept. 16, 2013) ............................................8

Van Alstyne v Ackerley Group, Inc., 8 Fed Appx 147 (2d Cir 2001)..........................................21

Vogel v City of New York, 2017 WL 4712791 (SDNY Sept. 19, 2017).....................................11

Wal-Mart Stores, Inc. v Dukes, 564 US 338 (2011)........................................................................8

Westchester Ind. Living Ctr., Inc. v State Univ. of New York, Purchase Coll., 331 FRD 279 (SDNY 2019)..........................................................................................................................6, 10

Williams v. Conway, 312 F.R.D. 248 (N.D.N.Y. 2016)..................................................................8

Williams v Jani-King of Phila. Inc., 837 F3d 314 (3d Cir 2016) ..................................................12

Zafarana v Pfizer, Inc., 724 F Supp 2d 545 (ED Pa 2010) ...........................................................16

Zeigan v. Blue Cross and Blue Shield, 607 F.Supp. 1434 (S.D.N.Y.1985) .................................23

Zivkovic v Laura Christy LLC, 329 FRD 61 (SDNY 2018) ........................................................13

Plaintiff respectfully submits this Memorandum of Law in support of his motion pursuant to Rules 23, 15 and 21 of the Federal Rules of Civil Procedure, to amend, sever and certify the hospitalized handcuffing policy claim for class treatment.

## PRELIMINARY STATEMENT

The New York City Police Department ("NYPD") maintains an explicit policy mandating that all hospitalized prisoners be handcuffed in all circumstances for the duration of their hospital stay. This practice is robotically applied in all instances, to all hospitalized individuals in NYPD custody, regardless of – and without any evaluation into – the necessity of handcuffing as a means of restraint in the first instance. More importantly, this policy exists even though the law has *never* granted police the *per se* authority to use handcuffs in *all* arrest situations – let alone for an unlimited duration where individuals are *already* in custody, under armed guard, and receiving medical treatment. Rather, the law is clear that the use of handcuffs at any point – and certainly for an extended period of hospitalization – must be based on an individualized evaluation into the necessity of handcuffing in each case.

For more than a decade, the NYPD has mechanically applied this unconstitutional policy to tens of thousands of hospitalized individuals without even a thought as to the actual need for handcuffing in any given circumstance. Further, this practice has been allowed to exist through a confluence of factors, including false perceptions regarding the overall permissibility of handcuffing in all arrest situations as well as the fact that this policy typically only affects underprivileged individuals who are generally underinformed about their constitutional rights. This ends here.

Frank Pirone, the named plaintiff herein, was subjected to this unconstitutional policy when he was handcuffed throughout his five-day hospitalization for a broken jaw in 2014. Thus,

he seeks to certify a class, pursuant to Fed. R. Civ. P. 23 consisting of all individuals who were or will be subjected to handcuffing during their hospitalization pursuant to the NYPD's policy of handcuffing all hospitalized arrestees without consideration as to the necessity of handcuffing ("hospitalized handcuffing policy") from May 18, 2014 through the present.

<u>**FACTUAL BACKGROUND**</u>

This litigation arises from an incident occurring on August 8, 2014, wherein Frank Pirone was seriously injured by NYPD officers during the course of an arrest. (Memorandum and Order ("Order"), Dkt. #69 at 1). Specifically, Mr. Pirone suffered a broken jaw which required treatment and surgery at Brookdale Hospital immediately following his arrest. (Order, Dkt. # 69 at 5). In addition, during his treatment for those injuries, Mr. Pirone remained handcuffed throughout his five-day hospitalization. (<u>Id</u>.); <u>see also</u> Deposition of Frank Pirone ("Pirone Dep."), attached to the Declaration of Joshua P. Fitch ("Fitch Decl."), Ex. A).

Consequently, on May 18, 2017, plaintiff commenced this action *pro se* in the United States District Court for the Eastern District of New York. (<u>See</u> Fitch Decl., ¶ 10, Dkt. # 1). Following its filing, on September 28, 2017, the City moved for a stay of the action pending the resolution of the parallel state court proceedings arising from the same incident.[1] (Dkt. # 16). On October 30, 2017, this Court denied defendants' motion to stay and on November 29, 2017, implemented a discovery schedule setting June 1, 2018 as a deadline. (Dkt. # 22 & 11/29/17 Minute Entry). Subsequently, in or around November 2017, plaintiff contacted the undersigned's

---

[1] On April 15, 2015, prior to filing his *pro se* federal action, plaintiff – then represented by counsel Scott Baron & Associates P.C. – brought an action in New York State Supreme Court, Kings County for the same incident. (Fitch Decl. at ¶ 8). However, on February 8, 2016, *unbeknownst* to plaintiff, his then counsel filed a motion to be relieved, which was granted by Order dated April 1, 2016, leaving plaintiff as a *pro se* litigant in the state action. (<u>Id</u>. at ¶ 9). Subsequently, on or about May 18, 2017, under the impression that the state action had been abandoned or dismissed, plaintiff commenced this *pro se* action in federal court in order to preserve his rights under the applicable statute of limitations. (<u>Id</u>. at ¶ 10).

law firm, Cohen & Fitch LLP, to inquire about representation; and, on January 10, 2018, the undersigned filed a Notice of Appearance in this matter. (Fitch Decl. at ¶ 7 & 11).

Immediately upon appearing, the undersigned filed a motion to amend plaintiff's original *pro se* complaint to clarify the factual and legal portions of the claims in this matter, which was granted on January 22, 2018. (Fitch Decl. at ¶12; Dkt. #'s 30 & 32). Thereafter, plaintiff filed an Amended Complaint that asserted a variety of constitutional claims under 42 U.S.C. § 1983 relating back to his August 8, 2014 arrest. (Fitch Decl. at ¶ 13; Dkt. # 32). Amongst those was a claim asserted against the City under <u>Monell v Dept. of Social Services of City of New York</u>, 436 US 658 (1978) for its hospitalized handcuffing policy. (<u>Id</u>.). Specifically, the claim alleged that plaintiff was caused "to be handcuffed continuously while he was admitted to the hospital for treatment for his injuries" pursuant to the NYPD's policy requiring "that individuals be and remain handcuffed during any hospitalization following arrests regardless of the necessity of the handcuffing," and that this policy had resulted in "repeated occurrences of similar wrongful conduct." (Dkt. # 32 at ¶¶ 48-53).

Following the Amended Complaint, over the next seven (7) months,[2] the parties conducted fact discovery related to the individual officer claims as well as policy discovery related to plaintiff's Monell claims with the assistance of Magistrate Judge Ramon E. Reyes Jr. (Fitch Decl. at ¶ 14). That discovery revealed – through the explicit mandate of the NYPD Patrol Guide as well as the testimony from every officer in this case – that the City maintained a blanket policy of handcuffing all hospitalized prisoners for unlimited durations, regardless and without any evaluation of, the actual necessity for handcuffing under the circumstances. (<u>Id</u>. at ¶ 15); <u>see</u> <u>also</u> the NYPD Patrol Guide Section related to Hospitalized Prisoners ("NYPD

---

[2] With the exception of certain of medical records from third-party providers that delayed the official conclusion of fact discovery, the parties had completed all relevant document exchanges and depositions by October 1, 2018.

Handcuffing Policy"), Fitch Decl., Ex. C; Deposition of Jay Rivera ("Rivera Dep."); Ex. D; Deposition of Kyle Stanley ("Stanley Dep."); Fitch Decl., Ex. E, Deposition of James Titus ("Titus Dep."), Fitch Decl., Ex. F. Thus, given the policy's universal mandate and scope, as well as the officers' understanding of the policy, it became clear that class treatment was appropriate for this particular claim. (Fitch Decl. at ¶ 15).

However, aware of defendants' intention to file for summary judgment from the outset of the litigation and knowing that the merits of plaintiff's hospitalized handcuffing policy claim would be crucial to class certification, rather than attempt to amend, sever and certify this claim at the close of discovery, the decision was made to await the Court's summary judgment ruling prior to seeking class treatment. (Id. at ¶ 16). On March 31, 2020, the Court denied defendants' motion for summary judgment in its entirety, and in pertinent part, found that it was "undisputed that the NYPD has a policy of handcuffing hospitalized prisoners" and that officers "understood the NYPD policy to require that all prisoners be handcuffed." (Order, Dkt. # 69 at 23). As a result, the instant motion is now before the Court.

<u>**ARGUMENT**</u>

## I. CLASS TREATMENT OF THE HANDCUFFING CLAIM IS APPROPRIATE AND PROPER IN THIS CASE

To obtain class certification, "[a] party must establish that the four threshold requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—are satisfied and demonstrate 'through evidentiary proof' that the class satisfies at least one of the three provisions for certification found in Rule 23(b)." In re U.S. Foodservice Inc. Pricing Litig., 729 F3d 108, 117 (2d Cir 2013). However, certification under Rule 23 is not "an all-or-nothing proposition requiring class certification of all causes of action asserted in a single pleading." Gunnells v Healthplan Services, Inc., 348 F3d 417, 442 (4th Cir 2003)(internal

quotations omitted)(citations omitted). Rather, federal courts are encouraged to "take full advantage" of their Rule 23 authority in "certify[ing] separate issues" so as to "achieve judicial efficienc[y]." Robinson v Metro-N. Commuter R.R. Co., 267 F3d 147, 167 (2d Cir 2001). In other words, as long as the prerequisites of Rule 23 are met with respect to a particular *claim*, "a court should certify a class on a claim-by-claim basis, treating each claim individually." Bolin v Sears, Roebuck & Co., 231 F3d 970, 976 (5th Cir 2000); Gunnells, 348 F3d at 441 (provided that "all other necessary requirements of subsections (a) and (b) of Rule 23 are met," courts should use Rule 23 "to separate 'one or more' claims that are appropriate for class treatment…rather than within the entire lawsuit as a whole.").

### A.  The Proposed Class Meets the Requirements for Certification Under Rule 23

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Amchem Products, Inc. v Windsor, 521 US 591, 617 (1997). Therefore, situations where "[t]he value of each claim *independently* is not sufficient to incentivize class members to pursue complex litigation" are considered to be "ideal for adjudication as a class action." Minter v Wells Fargo Bank, N.A., 274 FRD 525, 556 (D Md 2011)(emphasis added). Likewise, claims arising from a "blanket policy at issue" are "precisely the type of situation for which the class action device is suited." In re Nassau County Strip Search Cases, 461 F3d 219, 228 (2d Cir 2006).

Here, plaintiff Frank Pirone seeks to represent a class consisting of all individuals who were or will be subjected to handcuffing during their hospitalization pursuant to the NYPD's hospitalized handcuffing policy from May 18, 2014 through the present. As was recognized at summary judgment, this policy is uniformly applied to all hospitalized arrestees in all

circumstances, and therefore, has likely affected tens of thousands of individuals over the class period. (See Order, Dkt. # 69 at 23; see also Section I.A.i, infra). However, due to the size, value, and difficulty of litigating these isolated claims on a stand-alone basis, most of the individuals affected by this policy will likely never receive redress outside of the class action context. Accordingly, as will be discussed more fully herein, because the legality of the NYPD's blanket policy "'[is] about the most perfect question[] for class treatment'" (Lizondro-Garcia v Kefi LLC, 300 FRD 169, 177 (SDNY 2014) (citations omitted), and "it would not be economically efficient for [the class] to maintain individual suits" (Burley v City of New York, 2005 WL 668789, at *7 (SDNY Mar. 23, 2005)), the hospitalized handcuffing policy claim herein is the paradigmatic case for class treatment under Rule 23.

### i.   *Numerosity – Rule 23(a)(1)*

"In the Second Circuit, 'numerosity is presumed at a level of 40 members.'" Lanqing Lin v Everyday Beauty Amore Inc., 2019 WL 3037072, at *1 (EDNY July 11, 2019)(citations omitted). However, it is well settled that numerosity is not a rigid standard, and "a class action may proceed upon *estimates* as to the size of the proposed class." Alexander A. ex rel. Barr v Novello, 210 FRD 27, 33 (EDNY 2002)(emphasis added). Indeed, "[c]ourts within this Circuit have frequently relied on reasonable inferences based on statistical data to establish numerosity." Westchester Ind. Living Ctr., Inc. v State Univ. of New York, Purchase Coll., 331 FRD 279, 288-89 (SDNY 2019).

Here, given the universal application of the NYPD's hospitalized handcuffing policy, it is clear that any individual who is hospitalized at any point during an arrest will be subject to the policy. Thus, it logically follows that the class size (i.e., the number of individuals subjected to this policy) is some percentage of the total number of individuals arrested by the NYPD over the

class period. A fortiori, since the reported statistics place the number of individuals arrested over the class period between 1.3 and 1.4 million,[3] common sense alone dictates that it is a virtual certainty that more than 40 individuals were subjected to the hospitalized handcuffing policy. See, e.g., Lopez v City of Chicago, 2002 WL 31415767, at *4 (ND Ill Oct. 25, 2002):

> over 200,000 total arrests take place in Chicago each year…[b]ased on these allegations, common sense would dictate that Vladic has sufficiently pled numerosity. While the 200,000 arrests include both felony and misdemeanor arrests and all of the arrests do not include a detention for over 40 hours, a common sense assumption can be made that at least 40 of the 200,000 arrests include a felony arrest where the individual was detained for over 48 hours.

Id. This inference should be more than adequate to establish numerosity "particularly where, as here, more precise information about the size of the class is within the defendants' control" – namely, in the NYPD's Online Prisoner Arraignment ("OLPS") Database. Oscar v BMW of N. Am., LLC, 274 FRD 498, 504 (SDNY 2011); (see also the NYPD Online Prisoner Arraignment Database Record for Frank Pirone ("Pirone OLPS"), Fitch Decl., Ex. B).

Nevertheless, even assuming *arguendo* that an inference based on the total number of arrests is somehow insufficient, Cohen & Fitch LLP's own records are also useful in measuring the size of the potential class. Specifically, during the class period, Cohen & Fitch LLP has represented approximately 400 individuals arrested by the NYPD. (Fitch Decl. at ¶ 5). More importantly, of those 400 individuals, approximately 37 (or 9.25%) of them required some

---

[3] The number of individuals arrested from 2014 through 2018 was 1,288,781. (See The New York State Division of Criminal Justice Services Adult Arrest Data for arrests occurring in New York City from 2009 through 2018 ("DCJS Arrest Data"), Fitch Decl., Ex. G, https://www.criminaljustice.ny.gov/crimnet/ojsa/stats.htm (last visited May 1, 2020)). While the statistics do not include the 2019 totals, the number of arrests between 2014 and 2018 ranged from 306,048 to 205,556 per year. (Id.). Therefore, it is reasonable to assume that at least 200,000 or more arrests occurred in 2019. (Id.). Thus, since the overall total must be both increased to reflect 2019 arrests and reduced to account for the five months that preceded the beginning of the class period in 2014, the total arrests occurring from May 18, 2014 through the present is likely between 1,300,000 and 1,400,000.

manner of hospital treatment while in custody.[4] (Id. at ¶ 6). Thus, if one were to extrapolate that

a similar percentage of the total number of NYPD arrestees also received hospital treatment

while in custody during that same period, the number of class members would well exceed

100,000 individuals.[5] In fact, even if only 1% of the total number of arrestees required

hospitalization, the class size would still exceed ten thousand members. In other words, there is

almost no scenario in which the proposed class in this case would not exponentially exceed 40

members, thereby satisfying numerosity.

### ii. *Common Questions of Law or Fact – Rule 23(a)(2)*

Following the Supreme Court's decision in <u>Wal-Mart Stores, Inc. v Dukes</u>, 564 US 338

(2011), it is understood that in order to satisfy commonality, the claims of the class "must depend

upon a common contention" such that "determination of its truth or falsity will resolve an issue

that is central to the validity of each one of the claims in one stroke." <u>Id</u>. at 350. "Of course,

when a group of plaintiffs suffer under a uniform policy, the commonality test is often satisfied,

even after *Dukes*." <u>Oakley v Verizon Communications Inc.</u>, 2012 WL 335657, at *14 (SDNY

Feb. 1, 2012). In fact, where the class has been "'allegedly aggrieved by a single policy of

defendants,' and there is 'strong commonality of the violation and the harm,' this is precisely the

type of situation for which the class action device is suited." <u>Brown v Kelly</u>, 609 F3d 467, 484

(2d Cir 2010); <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 377 (2d Cir. 1997)(upholding class

---

[4] The identities of these individuals have not been disclosed in connection with this motion, however, if necessary, the undersigned can provide the Court a list of their names and corresponding claim/docket numbers for an *in camera* review.

[5] See, e.g., <u>Williams v. Conway</u>, 312 F.R.D. 248, 252 (N.D.N.Y. 2016) (reasonable inference that 0.14% of the prison population is profoundly deaf because 0.14% of the total population is profoundly deaf); <u>Hernandez v. AutoZone, Inc.</u>, 323 F.R.D. 496, 502 (E.D.N.Y. 2018) (percentage of Americans who use a wheelchair, cane, crutches, or a walker and number of individuals who visit defendant's store lead to the reasonable inference that numerosity is satisfied); <u>Toney-Dick v. Doar</u>, 2013 WL 5295221, at *5 (S.D.N.Y. Sept. 16, 2013) ("Plaintiffs' extrapolations from the data provided [regarding New York City's community of individuals with disabilities] persuades the Court by a preponderance of the evidence that there are at least 40 members of the proposed class"); <u>Cortigiano v. Oceanview Manor Home For Adults</u>, 227 F.R.D. 194, 204 (E.D.N.Y. 2005) (plaintiffs established numerosity based on publicly available census data).

certification for children whose cases were mishandled by child welfare where "the actions or inactions of defendants are not isolated or discrete instances but, rather, form a *pattern of behavior* that commonly affects all of the proposed class members.")(emphasis added); Daniels v City of New York, 198 FRD 409, 418 (SDNY 2001)("because the injuries complained of by the named plaintiffs allegedly resulted from the same unconstitutional practice or policy that allegedly injured or will injure the proposed class members-*namely suspicionless stops*-the commonality requirement is satisfied.")(emphasis added); Stinson v City of New York, 282 FRD 360, 369 (SDNY 2012)(recognizing that where the injuries suffered by the class are alleged to have "stem[med] from the same alleged unconstitutional conduct of the defendants [] the existence of common questions of law or fact [is proven]")(alteration added).

Here, a finding of commonality is virtually academic. The proposed class seeks redress for injuries caused by a single, uniform practice applied to all putative class members – namely, the NYPD's policy of handcuffing all hospitalized arrestees regardless, and without consideration of, the need (or continued need) for handcuffing. Further, it is *already* undisputed that this policy exists and is *blanketly* applied to *all* arrestees. (See Order, Dkt. # 69 at 23; see also NYPD Handcuffing Policy, Ex. C, Rivera Dep., Ex. D; Stanley Dep., Ex. E, Titus Dep., Ex. F). In fact, the only question – and one which is common to the class – is whether this policy, as it is written or applied in practice, passes constitutional muster. Accordingly, since the answer to this question – whatever it may be – "will resolve an issue that is central to the validity of each one of the claims in one stroke" (Dukes, 564 U.S. at 350), commonality is met in this case. See, e.g., Fleisher v Phoenix Life Ins. Co., 2013 WL 12224042, at *8 (SDNY July 12, 2013)("[w]hen, as here, a group of plaintiffs suffer under a uniform course of conduct or policy, the commonality test is easily satisfied.").

### iii. Typicality – Rule 23(a)(3)

Although technically separate, "similar considerations animate analysis" of both the commonality and typicality requirement such that the "requirements tend to merge into one another." Marisol A. 126 F.3d at 376. Like commonality, "[t]his criterion does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact 'occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" Caridad v. Metro-N. Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999) (citation omitted). Thus, just as commonality is normally easy to satisfy in pattern and practice claims, "[w]hen the same unlawful conduct [i]s directed at or affect[s] both the named plaintiffs and the prospective class, typicality is usually met" as well. Stinson, 282 F.R.D. at 371 (citing Robidoux, 987 F.2d at 937).

In the present case, typicality is satisfied for the very same reasons for which commonality is. Specifically, each and every putative class member has been aggrieved by the same universal hospitalized handcuffing policy. As such, because "establishing the existence of [a] unitary policy is sufficient for typicality," a finding of typicality under the facts of this case is almost automatic. Westchester Ind. Living Ctr., Inc., 331 FRD at 294; see also Robinson, 267 F.3d at 155-56 ("[W]hen each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability…[p]laintiffs' statistical report, 'in conjunction with the anecdotal evidence, satisfie[d] the Class Plaintiffs' burden of demonstrating' commonality *and* typicality.")(emphasis added).

### iv. Adequacy of Representation – Rule 23(a)(4)

The adequacy of representation requirement entails two factors: (1) the interests of the named plaintiffs cannot be antagonistic to those of the remainder of the class, and (2) class

counsel must be qualified, experienced, and generally able to conduct the litigation. <u>See</u> <u>Hirschfeld v. Stone</u>, 193 F.R.D. 175, 183 (S.D.N.Y. 2000)(<u>citing</u> <u>Marisol A.</u>, 126 F.3d at 378); <u>see</u> <u>also</u> <u>Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 522, 60 (2nd Cir. 2000). In other words, "[i]n order to defeat class certification, there must be 'a showing of a *genuine conflict*' between the proposed class representative's interests and those of the other members of the class." <u>Stinson</u>, 282 F.R.D. at 371 (emphasis added)(citation omitted). However, "only a conflict that *goes to the very subject matter of the litigation* will defeat a party's claim of representative status." <u>Hirschfeld</u>, 193 F.R.D. at 183 (emphasis added).

In the present case, there is absolutely no conflict. Plaintiff was handcuffed throughout his (5) day hospitalization as the result of the same policy that has affected the class which he seeks to represent. (<u>See</u> Pirone Dep., Ex. A). Moreover, the simple fact that Mr. Pirone is seeking to sever his handcuffing policy claim from his other meritorious – and substantially more valuable – excessive force claim in order to pursue relief for the benefit of the class as a whole, only exemplifies his adequacy as a class representative. Likewise, counsel's adequacy is similarly beyond cavil. In fact, Cohen and Fitch LLP have already been recognized as "competent and experienced in federal class action and federal civil rights litigation" in two separate civil rights class actions challenging unconstitutional policies and practices within the NYPD. <u>See</u> <u>Stinson</u>, 282 F.R.D. at 371 (false arrest class of over 650,000 plaintiffs); <u>Vogel v City of New York</u>, 2017 WL 4712791, at *5 (SDNY Sept. 19, 2017) (false arrest class of nearly 10,000 plaintiffs). Accordingly, the requirements of adequacy under Rule 23(a)(4) are satisfied.

### *v.* *Certification of a Damages Class Under 23(b)(3) is Warranted*

Under Rule 23(b)(3) certification is appropriate "'if the plaintiff can establish that the issues in the class action that are subject to generalized *proof,* and thus applicable to the class as

a whole…predominate over those issues that are subject *only* to individualized *proof.*'" Brown, 609 F.3d at 483 (citation omitted)(emphasis added); Williams v Jani-King of Phila. Inc., 837 F3d 314, 319 (3d Cir 2016)("[p]redominance turns on the '*nature of the evidence*' and whether '*proof* of the essential elements of the cause of action requires individual treatment.'"). "[T]he enduring principle [of] 'the predominance inquiry [is that it] must focus on common questions that can be proved through evidence common to the class.'" Jacob v Duane Reade, Inc., 293 FRD 578, 587 (SDNY 2013), affd, 602 Fed Appx 3 (2d Cir 2015). It is for precisely this reason that while predominance is certainly a more stringent inquiry than the requirements of 23(a), "satisfaction of the typicality requirement of Rule 23(a)…goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986).

Here, the claim that exists for *all* class members revolves around the NYPD's blanket hospitalized handcuffing policy. Moreover, the factual determinations (i.e. the proof) required to resolve this claim will be both general and common for every class member. These factual determinations include: a) what the NYPD's officially stated hospitalized handcuffing policy is; b) what the hospitalized handcuffing policy is *understood* to be; and, c) how the hospitalized handcuffing policy is actually carried out in practice.[6] Similarly, once these factual questions are answered, the ultimate question of liability will also be singular and common for every class member – namely, does that policy (in mandate and/or in practice) comport with constitutional standards.[7] Therefore, since all plaintiffs will "rely on the same proof to establish the existence

---

[6] Plaintiff respectfully submits that these questions have been largely answered thus far, but, given defendants' protestations in support of their motion for summary judgment that plaintiff had "mischaracterize[d] the Patrol Guide" (Order, Dkt. # 69 at 23), more substantial class discovery is likely necessary.

[7] No circuit court has ever held that a lawful arrest "categorically legitimize[s] binding a person's wrists in chains." E.W. by and through T.W. v Dolgos, 884 F3d 172, 180 (4th Cir. 2018). In fact, the Second Circuit and other sister circuits have all universally rejected any "invitation to adopt a *per se* rule that the use of handcuffs in effecting an arrest is *always* reasonable." Soares v State of Conn., 8 F3d 917, 921 (2d Cir 1993)(emphasis added). Moreover, the

and legality, or lack of legality of this practice," the class claim in this case is "ideally suited for (b)(3) certification." Brown v Kelly, 244 FRD 222, 238 (SDNY 2007), affd in part, vacated in part, 609 F3d 467 (2d Cir 2010); Zivkovic v Laura Christy LLC, 329 FRD 61, 75 (SDNY 2018)("[w]here plaintiffs' claims arise from a common policy and rely on a common legal theory, the predominance requirement is satisfied.").[8]

Likewise, the superiority of the class action vehicle for this claim – "[t]he second part of the Rule 23(b)(3) analysis" – is manifest. BlackRock Balanced Capital Portfolio (FI) v Deutsche Bank Natl. Tr. Co., 2018 WL 5619957, at *14 (SDNY Aug. 7, 2018). As previously stated, the class action mechanism is an appropriate tool to allow plaintiffs who would otherwise "have no realistic day in court" to "pool claims which would be uneconomical to litigate individually." Phillips Petroleum Co. v Shutts, 472 US 797, 809 (1985). In this sense, the class action device "may be the most practical means" of dealing with situations where plaintiffs would certainly be entitled to compensation for injury, but "may not be entitled to a large amount of damages." Bynum v D.C., 214 FRD 27, 40 (DDC 2003).

In the instant matter, while damages are certainly coextensive with any period of unlawful confinement in handcuffs, the *value* of those damages is not likely to be particularly substantial in the vast majority of cases – especially in comparison to the cost of litigation. In the

---

only circuit to have ever addressed a department-wide handcuffing policy claim has recognized "that a policy requiring handcuffing 'in all cases' and 'regardless of the circumstances' might be unconstitutional." Shelton v City of Taylor, 92 Fed Appx 178, 184 (6th Cir 2004); Kostrzewa v City of Troy, 247 F3d 633, 645 (6th Cir 2001)(reversing dismissal of a Monell claim alleging a "handcuff[ing] policy require[ing] that all detainees wear handcuffs, regardless of the circumstances,").

[8] While factual variances will potentially arise in the context of damages, such as differing time periods of handcuffing, circumstances that might exacerbate hospitalized handcuffing (i.e. pregnancy), or attendant injuries that accompany the handcuffing, it is "commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." In re Visa Check/MasterMoney Antitrust Litig., 280 F3d 124, 139 (2d Cir 2001), abrogated by In re Initial Pub. Offerings Sec. Litig., 471 F3d 24 (2d Cir 2006)(internal quotations omitted)(citation omitted). Moreover, if the individuality of damages becomes problematic the Second Circuit has "named several devices courts can use to manage the damage phase of the lawsuit." Collins v Olin Corp., 248 FRD 95, 105 (D Conn 2008).

same vein, the number of individuals subjected to this unconstitutional policy (potentially tens of thousands) coupled with "reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims," also militates in favor of class treatment. Balverde v Lunella Ristorante, Inc., 2017 WL 1954934, at *9 (SDNY May 10, 2017). Therefore, "in light of the large number of potential claimants" (In re SunEdison, Inc. Sec. Litig., 329 FRD 124, 147 (SDNY 2019)) and "the small damages suffered in relation to the expense of individual litigation" (Hardgers-Powell v Angels in Your Home LLC, 330 FRD 89, 106 (WDNY 2019)), the superiority of class treatment is almost indisputable.

### vi. Certification of an Injunctive Class is Also Warranted Under 23(b)(2)

By now it is clear that a court "may certify a damages-seeking class under Rule 23(b)(3), *and* an injunction-seeking class under Rule 23(b)(2)" (All Star Carts and Vehicles, Inc. v BFI Can. Income Fund, 280 FRD 78, 86 (EDNY 2012)(emphasis added), "so long as this Court 'engages in the analysis necessary under Rule 23(b)(2) and Rule 23(b)(3)' to certify both classes." Bristol Vil., Inc. v Louisiana-Pac. Corp., 916 F Supp 2d 357, 370 (WDNY 2013). Further, it is also clear that civil rights class actions typically present "'[i]llustrative' examples of the propriety of (b)(2) certification." Duprey v Connecticut Dept. of Motor Vehicles, 191 FRD 329, 339 (D Conn 2000); Loper v. New York City Police Department, 135 F.R.D. 81, 83 (S.D.N.Y. 1991) ("civil rights actions are 'paradigmatic 23(b)(2) class suits'") (citations omitted).

Here, while monetary compensation is certainly a predominant aspect of the relief sought, there is no question that effectuating a change in the NYPD's handcuffing policy to properly reflect constitutional standards would also be of crucial importance to ensure that others in the future are not subject to the same practice. As such, although the current Amended Complaint in

this case contains no claim for equitable relief, were this Court to permit class treatment, plaintiff would also request the ability to amend the prayer for relief to include equitable remedies. Accordingly, since "injunctive relief and damages are both important components of the relief requested…certif[ication] [of] an injunctive class under Rule 23(b)(2) *and* a damages class under Rule 23(b)(3) in the same action" is appropriate. <u>See</u> <u>In</u> <u>re</u> <u>Nasdaq Market-Makers Antitrust Litig.</u>, 169 F.R.D. 493, 515 (S.D.N.Y. 1996)(emphasis added).

### *vii. The Class Definition is Clearly Ascertainable*

"In addition to the explicit requirements of Rule 23(a), the class must satisfy the implied requirement of ascertainability." <u>Hasemann v Gerber Products Co.</u>, 331 FRD 239, 254 (EDNY 2019). However, the standard for ascertainability "is not *demanding*" and "is designed *only* to prevent the certification of a class whose membership is *truly indeterminable.*" <u>See</u> <u>Gortat v. Capala Bros., Inc.</u>, 2010 WL 1423018, *2, (E.D.N.Y. Apr 09, 2010) (emphasis added). Consequently, this requirement will be met as long as the court is "able to ascertain the general boundaries of the proposed class" based on the proposed definition. <u>In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.</u>, 241 F.R.D. 185, 194 (S.D.N.Y. 2007). Here, the class definition – namely, all individuals who were subjected to the NYPD's hospitalized handcuffing policy – easily satisfies that criteria.

Specifically, plaintiff has already adduced evidence sufficient to defeat summary judgment which establishes that the NYPD has a blanket policy of handcuffing all hospitalized prisoners in every circumstance regardless, and without an evaluation of, the need for handcuffing. (<u>See</u> Order, Dkt. # 69 at 23; NYPD Handcuffing Policy, Ex. C, Rivera Dep., Ex. D; Stanley Dep., Ex. E, Titus Dep., Ex. F). Therefore, it follows that any individual who was hospitalized at any point during their arrest would necessarily have been subjected to this policy,

and would thus fit into the class definition. Moreover, it is also undisputed that the NYPD's

OLPS database tracks the physical location of each arrestee in its custody as well as the time and

duration spent at any medical facility. (See Pirone OLPS, Ex. B). For instance, the OLPS for

plaintiff in this case gives the precise date and time that he arrived and departed Brookdale

hospital. (Id.). Accordingly, because ascertainability in this case will simply be a matter of data

sorting, class certification is appropriate.

### B. There is No Procedural Impediment to Allowing the Handcuffing Claim to be Amended, Severed and Treated as a Class Action

Notwithstanding that plaintiff's hospitalized handcuffing policy claim is uniquely

appropriate for class certification under Rule 23; and, that Rule 23 unquestionably gives this

Court the authority to certify an individual claim for class treatment, defendants will no doubt

argue that class treatment is inappropriate because this action was originally brought as a single-

plaintiff excessive force claim. This argument lacks merit for several reasons.

#### i. The Nature of the Initial Pleadings is Irrelevant to Determining Whether a Class Action Exists

It is well settled that "until certification there is no class action but merely the prospect of

one [and] the only action is the suit by the named plaintiff[]." Police and Fire Retirement Sys. of

City of Detroit v IndyMac MBS, Inc., 721 F3d 95, 112 (2d Cir 2013) (quoting Morlan v

Universal Guar. Life Ins. Co., 298 F3d 609, 616 (7th Cir 2002)). That is, "a complaint does not

*become* a class action until the class is certified." Zafarana v Pfizer, Inc., 724 F Supp 2d 545, 558

(ED Pa 2010)(emphasis added). Consequently, if the individual claim "become[s] moot prior to

class certification, the entire action becomes moot." Comer v Cisneros, 37 F3d 775, 798 (2d Cir

1994). In that sense, "certification transforms [a] single-plaintiff action into a class action"

(McDowall v Cogan, 216 FRD 46, 50 (EDNY 2003)), thereby creating a new action entirely

"'ha[ving] a legal status separate from and independent of the interest asserted by the named plaintiff.'" <u>Payton v County of Kane</u>, 308 F3d 673, 680 (7th Cir 2002) (citations omitted). Thus, while a complaint "is often referred to as a class action when it is filed, it is, at the time of filing, only a would-be class action," and any label attached to the original pleading is therefore largely irrelevant. <u>Bank v Am. Home Shield Corp.</u>, 2013 WL 789203, at *2 (EDNY Mar. 4, 2013)(internal quotations omitted) (citations omitted). Accordingly, the fact that plaintiff's handcuffing claim has – to this point – been styled as a single-plaintiff action is inconsequential.

        **ii.**      ***There is Ample Precedent Establishing the Propriety of Amending and/or Recharacterizing an Individual Claim as a Class Action***

Even if the label attached to the pleading was important – which it is not – it is far from a novel concept for courts to allow an individual action or claim to be transformed, amended or recharacterized in order to allow for class treatment. <u>See</u>, <u>e.g.</u>, <u>Bertrand v Sava</u>, 535 F Supp 1020, 1023 (SDNY 1982), <u>revd,</u> 684 F2d 204 (2d Cir 1982) (granting amendment allowing plaintiff to convert his individual claim into a class action); <u>Konig v TransUnion, LLC</u>, 2020 WL 550285, at *1 (SDNY Feb. 4, 2020) (same); <u>Presser v. Key Food Stores Co-op, Inc.</u>, 218 F.R.D. 53, 56 (E.D.N.Y. 2003) (same); <u>Seindenrose v Mercy Med. Ctr.</u>, 2006 WL 8439436, at *4 (EDNY July 10, 2006) (same); <u>Langley v Coughlin</u>, 715 F Supp 522, 554 (SDNY 1989) (same); <u>Monk v. , Paramount Recovery System</u>, 2010 WL 11553076, at *3 (D Md June 9, 2010) (same); <u>Paskuly v Marshall Field & Co.</u>, 646 F2d 1210, 1211 (7th Cir 1981) (same); <u>Coates v Johnson & Johnson</u>, 1981 WL 26976, at *3 (ND Ill May 29, 1981) (same); <u>Conover v Rash Curtis & Assoc.</u>, 2016 WL 3708656, at *2-3 (DNJ July 12, 2016) (same); <u>Ashcraft v Welk Resort Group, Corp.</u>, 2018 WL 357850, at *2 (D Nev Jan. 10, 2018) (same). Moreover, a review of these cases makes it abundantly clear that courts do use any *special* rules or exceptions to accomplish this, but rather have simply analyzed any such proposed reclassifications under the normal permissive

amendment standard found in FRCP 15, which counsels that "leave to amend a party's pleading 'shall be freely given when justice so requires'" and "'mere technicalities' should not prevent cases from being decided on the merits."[9] <u>Monahan v New York City Dept. of Corrections</u>, 214 F3d 275, 283 (2d Cir 2000).

### C. Changing an Individual Claim into a Representative Claim is Insufficient to Warrant Denial of Class Treatment

The Second Circuit has observed that "[t]ransforming an individual action into a class action does not, in and of itself, create the type of prejudice sufficient to deny a motion to amend." <u>Bertrand</u>, 535 F Supp at 1023; <u>Ashcraft</u>, 2018 WL 357850, at *2 ("allowing the addition of class claims [that] would expand the scope of this case, resulting in added expense and delay.....does not, in and of itself, create the type of prejudice sufficient to deny leave to amend."); <u>Schwend v U.S. Bank, N.A.</u>, 2011 WL 5039812, at *2 (ED Mo Oct. 24, 2011)("Although amending this case to a class action will likely subject defendants to greater liability, this is not sufficient cause to deny amendment."). Thus, "simply transforming an individual action into a class action, while of course being somewhat prejudicial to the defendant, does not constitute substantial prejudice" sufficient to deny the requested amendment/reclassification in this case. <u>Conover</u>, 2016 WL 3708656, at *2-3.

---

[9] Because these situations have been analyzed under Rule 15's permissive amendment standard, the instant motion has been structured and analyzed according to those principles. However, it should be noted that the Second Circuit has implicitly suggested that the authority to "recharacteriz[e] [a lawsuit] as a class action," may, in "appropriate case[s]," also exist outside of Rule 15. <u>Certain Underwriters at Lloyd's of London v Illinois Nat. Ins. Co.</u>, 2012 WL 4471564, at *7 (SDNY Sept. 24, 2012). In those situations, the Circuit has suggested that a formal motion to amend the pleadings under Rule 15 is a "meaningless gesture." <u>Id</u>. A fortiori, since a grant of certification under Rule 23, by itself, has the effect of transforming an individual lawsuit into a class action, it is at least arguable that a formal motion to amend is unnecessary where – as here – a plaintiff can establish that the requirements for class certification have otherwise been met.

### i. The Discovery Burdens Associated with Class Treatment Do Not Constitute Unfair Prejudice

While defendants will certainly argue that "the inclusion of class claims would require additional discovery," courts agree that this is "not sufficient to defeat" a proposed amendment to transform the litigation from a single plaintiff to a representative action. <u>Konig</u>, 2020 WL 550285, at *3; <u>Seindenrose</u>, 2006 WL 8439436, at *4 ("an adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."); <u>New Windsor v. Tesa Tuck, Inc.</u>, 919 F.Supp. 662, 679 (S.D.N.Y.1996) ("The burden of further discovery and motions is not a satisfactory basis to deny a motion to amend."). This is especially true where the defendants would have been exposed to the *exact same discovery* had this case been filed as a class action from the outset of the litigation. <u>See</u>, <u>e.g.</u>, <u>S.S. Silberblatt, Inc. v. East Harlem Pilot Block</u>, 608 F.2d 28, 43 (2d Cir.1979):

> the burden of undertaking discovery, which [Defendant] would have shouldered had the proposed amendment been incorporated in the complaint as originally filed, hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits.

<u>Id.</u>; <u>Bernstein v Natl. Liberty Intern. Corp.</u>, 407 F Supp 709, 714 (ED Pa 1976)(Recognizing that "[h]ad plaintiff filed her original complaint as a class action, [] it would have been as prejudicial then as it is now" and finding that this was "hardly the type of prejudice that would convince this Court to deny the motion to amend which seeks to add class action allegations.").

Here, regardless of whether plaintiff had initially filed this claim as a class action, or attempted to certify this claim prior to summary judgment, the City would have been exposed to the *exact same* discovery burden. In fact, the *only* difference is that this burden would have occurred at a different *time* in the litigation, which, as will be discussed in Section C.iii, <u>infra</u>,

may have been extremely wasteful prior to the Court's inquiry into the merits of the handcuffing claim in the first instance. Simply put, defendants in this case are "hard pressed" to establish prejudice sufficient to warrant denial of class treatment given that "[p]laintiff could have exposed Defendant[s] to the very same prejudice had [he] just filed the suit as a class action in the first place." Conover, 2016 WL 3708656, at *3.

### ii. There is no Prejudice Where the Class Claim is the Same as Plaintiff's Original Hospitalized Handcuffing Policy Claim

"Central to th[e] analysis" of whether or not to allow class treatment of a previously individual claim, is "the extent to which the new claims arise from the existing ones." Konig, 2020 WL 550285, at *3. Stated differently, establishing unfair prejudice is particularly difficult where "[p]laintiff does not seek to add a new cause of action, but [simply] to add a class of plaintiffs on a claim *already* in the complaint." Presser, 218 FRD at 56 (alteration added)(emphasis added); Konig, 2020 WL 550285, at *4 (allowing plaintiff to convert his individual claim into a class action "because it 'ar[o]se[] from the same transaction as the claims in the original pleading'")(citations omitted); Conover, 2016 WL 3708656, at *3 (granting leave where "[p]laintiff's class action allegations are based on the same set of facts as Plaintiff's original individual claims."); Monk, 2010 WL 11553076, at *3 (granting leave where "plaintiff's proposed amendment d[id] not add any additional theories of recovery," and recognizing that this fact "weigh[s] heavily in plaintiff's favor").

In this case, the claim against the City for which plaintiff now seeks class treatment is the same as it has always been since the first Amended Complaint – namely, that the NYPD maintains an unconstitutional policy of handcuffing all hospitalized arrestees without an evaluation of the necessity of the handcuffing. (See Dkt. # 32 at ¶¶ 48-53). Moreover, given that plaintiff's Amended Complaint *already* contained allegations that this policy had caused

"repeated occurrences of similar wrongful conduct" (Dkt. # 32 at ¶53), and defendants "admit[]"

(Order, Dkt. # 69 at 24) that this *citywide* policy exists, they should have at least arguably been

aware that they might have to defend the constitutionality of this practice on a larger scale. See,

e.g., Paskuly, 646 F2d at 1211:

> We note that the original complaint alleged that defendant engaged in practices
> that discriminated against women because of their sex; the defendant was thereby
> on notice that it might be required to defend its employment practices from
> charges of class-based discrimination...we therefore cannot agree with the district
> court that defendant was "'put off' notice" of the possibility of a class action
> when plaintiff instituted this action in an individual capacity.

Id. Accordingly, although the complaint in this case "did not contain class action

allegations, it did allege all of the basic facts material to the class claims" and thus, any alleged

claim of prejudice is unfounded. Langley, 715 F Supp at 554.

### iii. There is No Plausible Argument that Defendants were Prejudiced by the Passage of Time Between the Complaint and the Instant Motion

To the extent defendants argue that the delay between the complaint and the current

motion to amend/sever/certify should warrant denial of class treatment, this argument too lacks

merit. First, it is well settled that "leave to amend may be appropriate at any stage of litigation"

(Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 97 (S.D.N.Y. 2010)), and may be done "at

any time, even after judgment." Van Alstyne v Ackerley Group, Inc., 8 Fed Appx 147, 155 (2d

Cir 2001). In short, absent some *articulable* prejudice to defendants, the mere lapse of time

between the filing of the complaint and the instant motion "is not, of itself, sufficient to justify

denial of a Rule 15(a) motion" or a motion for class certification.[10] Parker v. Columbia Pictures

Indus., 204 F.3d 326, 339 (2d Cir. 2000)(internal citations omitted); see also Pyke v Cuomo, 209

---

[10] Class certification may also be addressed "at any time." In re NASDAQ Market–Makers Antitrust Litig., 187
F.R.D. 465, 476 (S.D.N.Y.1998); Gen. Tel. Co. of Southwest v Falcon, 457 US 147, 160 (1982)(class certification is
an "inherently tentative" order that a "judge remains free to modify it in the light of subsequent developments").

FRD 33, 37 (NDNY 2002)(finding that a motion for class certification made ten years after the filing of the complaint was not untimely).

Second, it would seem particularly disingenuous for defendants to claim that they were prejudiced by any delay in this case when it is defendants who sought to delay this action *indefinitely* from the start. Indeed, on September 28, 2017 – four months after the filing of the *pro se* complaint – defendants moved for an *indefinite stay* of these proceedings "pending the resolution of the state court matter." (Dkt. # 16). Although this motion was ultimately denied, it is nevertheless noteworthy in this context because the "state court matter" to which defendants' motion was referring, is *still pending*. In other words, the present motion is actually being filed *sooner* than it would have been under defendants' own requested timeline.

Third, while the total passage of time between the complaint's filing and the instant motion is three years, this does not reflect the true – and much shorter – amount of time spent actually *litigating* this case. In particular, setting aside the fact that plaintiff's *pro se* status would have *prevented* him from originally filing this case as a class action,[11] discovery did not actually begin until following the undersigned's appearance and the status conference on February 21, 2018. Moreover, discovery was substantially completed within seven (7) months, and the remaining time since then has been predominantly occupied by *defendants'* motion for summary judgment. As such, it is clear that the amount of actual litigation time that has elapsed in this case is insubstantial. Notwithstanding, courts have repeatedly granted amendments following delays of three years or greater even *without* any similar attenuating circumstances. See, e.g., Commander Oil Corp. v. Barlo Equipment Corp., 215 F.3d 321, 333 (2d Cir.2000) (seven-year

---

[11] "It is well established that 'a *pro se* class representative cannot adequately represent the interests of other class members.'" Rodriguez v Eastman Kodak Co., 88 Fed Appx 470, 471 (2d Cir 2004). Therefore, even if plaintiff had been aware of the NYPD's handcuffing policy and/or its classwide impact at the time he filed his *pro se* complaint, he would have been legally prohibited from filing a class action.

delay); <u>Rachman Bag Co. v. Liberty Mutual Insurance Co.</u>, 46 F.3d 230, 235 (2d Cir.1995) (four-year delay); <u>Block v. First Blood Associates</u>, 988 F.2d 344, 350–51 (2d Cir.1993) (amendment allowed four years after complaint filed); <u>State Teachers Retirement Bd. V. Four Corp.</u>, 654 F.2d 843, at 845–46 (2d Cir, 1981) (amendment allowed after three-year interval); <u>Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.</u>, 392 F.2d 380, 383 (2d Cir.1968) (amendment allowed after three-year interval and notice of trial readiness); <u>Zeigan v. Blue Cross and Blue Shield</u>, 607 F.Supp. 1434, 1438 (S.D.N.Y.1985) (amendment allowed after three-year interval); <u>Green v. Wolf Corp.</u>, 50 F.R.D. 220, 223 (S.D.N.Y.1970) (amendment allowed after four-year interval).

Lastly, it was particularly "appropriate" for plaintiff to wait for the Court to "rule on [] summary judgment [] prior to class certification" in this case in order "to prevent inefficiency [and] avoid waste." <u>Kurtz v Kimberly-Clark Corp.</u>, 321 FRD 482, 507 (EDNY 2017) (alteration added)(internal quotations omitted) (citation omitted); <u>Authors Guild, Inc. v Google Inc.</u>, 721 F3d 132, 135 (2d Cir 2013) (finding it more appropriate to "hold[] the issue of class certification in abeyance until Google's fair use defense has been resolved"); Barbara J. Rothstein, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES (Federal Judicial Center 2009) (encouraging judges to rule on dispositive motions prior to class certification). Specifically, as this Court has recognized, "'Rule 23 does not set forth a mere pleading standard, [but] [r]ather, the party seeking class certification under Rule 23 must 'affirmatively demonstrate' that the requirements of the Rule have been met." <u>Moukengeschaie v Eltman, Eltman & Cooper, P.C.</u>, 277 F Supp 3d 337, 346 (EDNY 2017); (<u>King v Gulf Oil Co.</u>, 581 F2d 1184, 1186 (5th Cir 1978))("[t]he propriety of class action suits can seldom be determined on the basis of pleadings alone"). In other words, "conservation of court resources requires that plaintiff

demonstrate that they have a reasonable chance of success before the costs attendant on certification are shouldered by the litigants." Schwab v Philip Morris USA, Inc., 449 F Supp 2d 992, 1098 (EDNY 2006), rev'd sub nom. McLaughlin v Am. Tobacco Co., 522 F3d 215 (2d Cir 2008).

Here, because the only proposed class claim in this case is plaintiff's hospitalized handcuffing policy claim, any chance for class certification – regardless of the timing of the motion – largely depends on plaintiff's ability to prove the existence of a class-wide policy. See, e.g., In re W. Dist. Xerox Litig., 850 F Supp 1079, 1082 (WDNY 1994) ("The clear import of Judge Lechner's two decisions is that *if* the plaintiffs *had* established a *corporate-wide* pattern and practice of discrimination, then there might have been a sufficient basis to allow the case to proceed as a class action."). Further, as indicated in Section I.A.i, supra, even the most conservative estimates of numerosity place the number of affected class members in the tens of thousands. Accordingly, given the size of the potential class and the fact that proof of the policy is essential to class treatment in the first instance, conducting large scale class discovery *prior* to the Court's determination on the merits of the handcuffing policy claim might have been immensely wasteful for both the parties and the court. Indeed, as Judge Posner has observed:

> It is true that Rule 23(c)(1) of the civil rules requires certification as soon as practicable, which will usually be before the case is ripe for summary judgment...[b]ut "usually" is not "always," and "practicable" allows for wiggle room. Class actions are expensive to defend. One way to try to knock one off at low cost is to seek summary judgment before the suit is certified as a class action.

Cowen v Bank United of Texas, FSB, 70 F3d 937, 941 (7th Cir 1995). In sum, since "the resolution of the summary judgment motion [would have] eliminate[d] the need to consider the certification motion *ab initio,"* awaiting a decision on that motion *before* seeking class treatment was in "the court's interest in preserving judicial resources, as well as the resources of the

litigants." <u>Cruz v Am. Airlines</u>, 150 F Supp 2d 103, 111 (DDC 2001), <u>affd sub nom.</u> <u>Cruz v Am.</u> <u>Airlines, Inc.</u>, 356 F3d 320 (DC Cir 2004). For all these reasons, plaintiff's motion for class treatment of his hospitalized handcuffing policy claim should be granted.

## II.    UPON CERTIFICATION, THE CLASS CLAIMS SHOULD BE SEVERED

"[W]hen a plaintiff who attempts to maintain a class action as a representative also states a sufficient individual claim against [a] defendant [or multiple defendants], the...[individual] claim may be severed and proceeded with separately in different proceedings." 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1689 (1986); <u>see</u> <u>also</u> <u>Medicare Beneficiaries' Def. Fund v. Empire Blue Cross Blue Shield</u>, 938 F.Supp. 1131, 1147 (E.D.N.Y.1996); <u>Ahmed v T.J. Maxx Corp.</u>, 777 F Supp 2d 445, 450 (EDNY 2011)(citation omitted).

Here, although plaintiff's hospitalized handcuffing policy claim for which he seeks class treatment *technically* arises from the same occurrence as his excessive force claim, they are very different claims, involving distinct acts, distinct standards of liability, and temporally distinct periods of time. Further, given the nature and scope of the class claims, it makes little sense to litigate them in the same action as plaintiff's excessive force claim. Therefore, since "there is little to gain in judicial economy from maintaining [plaintiff's] individual claims *together* with the class [] claims," severance is proper. <u>Dickerson v Novartis Corp.</u>, 315 FRD 18, 25-26 (SDNY 2016)(emphasis added)(alteration added).

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court amend, sever and certify plaintiff's hospitalized handcuffing policy claim for class treatment, pursuant to Rules 23, 15 and 21.

Dated: New York, New York
     May 7, 2020

                                 Respectfully submitted,
                                 COHEN & FITCH LLP

By: _____/S_____
       JOSHUA P. FITCH (JF-2813)
       GERALD M. COHEN (GC-0414)
       COHEN & FITCH LLP
       Attorneys for Plaintiffs
       225 Broadway, Suite 2700
       New York, N.Y. 10007